UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLENN A. HOLCOMB,<br><br>            Plaintiff,<br><br>      v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>            Defendant. | No. 2:13-cv-1990-EFB<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties' cross-motions for summary judgment are pending. For the reasons discussed below, plaintiff's motion is denied and defendant's motion is granted.

I.     BACKGROUND

Plaintiff filed an application for a period of disability and DIB on July 16, 2010, alleging that he had been disabled since June 15, 2010. Administrative Record ("AR") 79, 142-146. Plaintiff's application was denied initially and upon reconsideration. *Id*. at 81-83, 87-91. On September 25, 2012, a hearing was held before administrative law judge ("ALJ") Jean R. Kerins. *Id*. at 39-68. Plaintiff was represented by counsel at the hearing, at which he and a vocational expert ("VE") testified. *Id*.

1

On October 11, 2012, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i) and 223(d) of the Act.[1] *Id*. at 21-34. The ALJ made the following specific findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2013.

2. The claimant has not engaged in substantial gainful activity since June 15, 2010, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following medically determinable impairments: intermittent back and neck strain, mild hand tremor, and an adjustment disorder with depression (20 CFR 404.1521 *et seq*.).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id*.

\* \* \*

4. The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR 404.1521 *et seq*.).

\* \* \*

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

\* \* \*

6. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except he can only occasionally crawl, climb, and kneel.

\* \* \*

7. The claimant is capable of performing past relevant work as a crew leader, loan officer, pharmacy technician, and temp agency worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

\* \* \*

8. The claimant has not been under a disability, as defined in the Social Security Act, from June 15, 2010, through the date of this decision (20 CFR 404.1520(f)).

*Id*. at 23-33.

Plaintiff requested that the Appeals Council review the ALJ's decision, *id*. at 13-17, and on July 25, 2013, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner. *Id*. at 1-6.

II.   LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin*., 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin*., 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

3

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III.   ANALYSIS

Plaintiff disputes the ALJ's step two finding that plaintiff has no severe limitations. ECF No. 14 at 11-16. Specifically, plaintiff argues that the ALJ erred by (1) failing to consider plaintiff's asbestosis at step two; (2) failing to find plaintiff's mental impairment were severe; (3) improperly rejecting the opinions of plaintiff's treating chiropractor; (4) improperly discrediting plaintiff's subjective complaints and credibility; and (5) improperly rejecting lay witness testimony. *Id.*

"The step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The purpose is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were not taken into account. *Yuckert*, 482 U.S. at 153. At step two of the sequential evaluation, the ALJ determines which of claimant's alleged impairments are "severe" within the meaning of 20 C.F.R. § 404.1502(c). A severe impairment is one that "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Social

4

Security Ruling ("SSR") 96-3p, 1996 SSR LEXIS 10 (1996)). At the second step the plaintiff has the burden of providing medical evidence of signs, symptoms, and laboratory findings that show his impairments are severe and expected to last for a continuous period of twelve months. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004-05 (9th Cir. 2005); *see also* 20 C.F.R. §§ 404.1508, 404.1509, 404.1520(a)(4)(ii).

### A. The ALJ Considered Plaintiff's Asbestosis at Step Two

Plaintiff argues that the ALJ erred at step two of the sequential evaluation process by failing to consider the severity of his asbestosis. ECF No. 14 at 14-15.

The ALJ found the following medically determinable impairments: (1) intermittent back and neck strain, (2) mild hand tremor, and (3) an adjustment disorder with depression. AR 23. The ALJ did not identify asbestosis as one of plaintiff's determinable impairments. However, the ALJ noted that plaintiff alleged having mesothelioma, but concluded that the diagnosis was not supported by objective medical evidence. *Id*. Plaintiff concedes that he misidentified his lung impairment as mesothelioma, but argues that the record clearly demonstrates that he has asbestosis. ECF No. 14 at 17. Therefore, he contends, the ALJ improperly failed to consider the asbestosis at step two. The argument is not supported by the record.

Whether identified as asbestosis or mesothelioma, the ALJ clearly considered this condition. Specifically, the ALJ noted that plaintiff's "mesothelioma was asymptomatic," AR 27, a finding that is supported by the medical record, *id*. at 313. Thus, the ALJ did consider plaintiff's lung impairment at step-two and ultimately concluded that it was not severe.

### B. The ALJ Properly Found Plaintiff's Mental Impairment Not Severe

Plaintiff next argues that the ALJ erred in finding plaintiff's mental impairment was not severe. ECF No. 14 at 13.

Pursuant to the analytical procedures prescribed by the regulations, after the ALJ determines that the claimant has a medically determinable mental impairment, he then rates the degree of the claimant's functional limitations in four areas, known as the "B Criteria": (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(b)-(c). In the first three areas, the ALJ rates

1 the limitations as either none, mild, moderate, marked, or extreme.  The fourth functional area,
2 episodes of decompensation, is rated on a four point scale of none, one or two, three, and four or
3 more.  20 C.F.R. § 404.1520a(c)(3)-(4).  If the degree of limitation in the first three functional
4 areas is "none" or "mild" and "none" in the fourth area, it is generally concluded that the
5 impairment(s) is not severe.  20 C.F.R. § 404.1520a(d)(1).

6       Here, the ALJ followed this analytical procedure and determined that plaintiff's mental
7 impairment was not severe, specifically finding that plaintiff had no more than "mild" restrictions
8 in the first three functional areas and "no" episodes of decompensation in the fourth area.  AR 31-
9 32; *see* 20 C.F.R. § 404.1520a(d)(1).  These findings are supported by the treatment notes in
10 plaintiff's medical records as well as the opinions of Drs. Price and Jacobs.

11       Medical records indicate that on January 27, 2011, plaintiff sought mental health
12 treatment at the VA clinic for depression.  AR 278-284.  Plaintiff saw Dr. Fuller, a clinical
13 psychologist, who performed a mental examination and found plaintiff to be pleasant and
14 cooperative with logical thought processes, good judgment, poor insight, and no memory
15 impairments.  *Id.* at 282-283.  Dr. Fuller noted that plaintiff demonstrated few symptoms of
16 depression and was not interested in counseling, group treatment or medication, but wished to
17 "document his distress in support of a claim he was working on related to radiation exposure
18 while in the military."  *Id*. at 281.  In later treatment notes, Dr. Fuller noted that she explained to
19 plaintiff that "he does not have a psychiatric disability that would make it impossible for him to
20 work . . . ."  *Id.* at 384.

21       On April 11, 2011, treatment notes show that plaintiff underwent a psychological
22 evaluation at the VA clinic by Dr. Goudelock.  *Id.* at 320-330.  Dr. Goudelock diagnosed plaintiff
23 with an adjustment disorder with mixed anxiety and depressed mood, and upon mental
24 examination, found plaintiff to have good to fair attention and judgment, and fair insight.  *Id.* at
25 327-328.

26       Plaintiff was also examined by Dr. Leslie Price on May 19, 2011.  *Id.* at 338-343.  Dr.
27 Price found that plaintiff had no psychiatric diagnosis and opined that plaintiff had no
28 impairments in his ability to relate and interact with supervisors and co-workers, understand and

6

carry out complex job instructions or simple one-to-two step jobs, deal with the public, maintain concentration, persistence, or pace, withstand the stress and pressure of day-to-day work activity and manage his own funds. *Id.* at 341-342.

The record further contains an assessment by non-examining physician Dr. Uwe. *Id.* at 344-357. Dr. Jacobs diagnosed plaintiff with an adjustment disorder, but found it was non-severe. *Id.* at 344. Dr. Jacobs opined that plaintiff had no restrictions in his activities of daily living, no difficulties maintaining social functioning, concentration, persistence, or pace, and no repeated episodes of decompensation. *Id.* at 354.

Despite this evidence, plaintiff contends that he has a severe mental impairment. He argues that the ALJ ignored "the abnormalities revealed by Dr. Goudelock's examination," as well as the GAF scores assessed by Dr. Goudelock and Dr. Fuller. ECF No. 14 at 13. According to plaintiff, the GAF scores expressed by his treating psychologists were medical opinions and therefore the ALJ was required to give specific and legitimate reasons for rejecting them.[2] *Id.*

First, plaintiff does not specifically identify the purported "abnormalities revealed by Dr. Goudelock's examination." As discussed above, the treatment notes of Dr. Goudelock, as well as notes from Dr. Fuller, do not suggest any significant abnormality or that plaintiff has a moderate mental impairment. Moreover, although the ALJ did not specifically mention Drs. Goudelock or Fuller by name, she summarized their treatment notes and relied on their findings in determining that plaintiff's mental impairment is not severe. The ALJ specifically stated that "[s]ince the claimant sought some treatment (even if only to document his symptoms for a claim) the undersigned has given the claimant the benefit of the doubt and finds that [sic] a medically determinable impairment, but agrees with the medical sources [Drs. Price and Jacobs] that it does not result in any functional limitations and is not severe." *Id.* at 31.

---

[2] Plaintiff also argues that because the ALJ failed to give specific and legitimate reasons for rejecting Drs. Goudelock's and Fuller's purported opinions, the ALJ erred by not including them in her residual functional capacity ("RFC") finding. ECF No. 14 at 13. As discussed below, the ALJ was not required to give specific and legitimate reasons for not discussing the examinations of Drs. Goudelock and Fuller. Furthermore, as the ALJ determined that the plaintiff had no severe limitations and was not disabled, the court declines to adjudicate plaintiff's post step two challenges to the ALJ's decision.

7

There is also no basis for plaintiff's contention that the GAF scores assessed by Drs. Goudelock and Fuller are medical opinions, therefore the ALJ was not required to provide specific and legitimate reasons for rejecting them. *See* ECF No. 14 at 13. "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas. v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). "The scale does not evaluate impairments caused by psychological or environmental factors." *Morgan*, 169 F.3d at 598 n.1. Because the scores are intended for use in planning treatment, they are not dispositive in social security cases, *Vance v. Astrue*, 2008 U.S. Dist. LEXIS 64770 (C.D. Cal. July 30, 2008), and "an ALJ is not required to give controlling weight to a treating physician's GAF score," *Chavez v. Astrue*, 699 F. Supp. 2d 1125, 1135 (C.D. Cal. 2009). Thus, "[a]n ALJ has no obligation to credit or even consider GAF scores in the disability determination." *Aldrich v. Colvin*, 2014 U.S. Dist. LEXIS 164287, at *29 (E.D. Wash. Nov. 24, 2014) (citing 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000) (GAF scale does not have a direct correlation to the severity requirements in SSA mental disorders listings)).

Accordingly, the ALJ did not err in finding that plaintiff's mental impairment was non-severe at step two of the sequential evaluation process.

        C.      <u>The ALJ Properly Rejected Plaintiff's Treating Chiropractor's Opinion</u>.

Plaintiff further argues that the ALJ improperly rejected the opinion of Dr. Carol Hamby, his treating chiropractor. ECF No. 14 at 11-12.

On March 22, 2011, Dr. Hamby completed a medical source statement indicating plaintiff's primary impairment was "lumbrosacral disc w[ith] sciatica." AR 361-362. The findings were based on a range of motion test. *Id.* at 361. Dr. Hamby opined plaintiff could sit for 6 hours (with the ability to stand/walk as needed), stand/walk for 2 hours, lift ten pounds frequently and fifteen pounds occasionally, and perform only sedentary work (as defined by the Social Security Act). *Id.* The ALJ rejected Dr. Hamby's opinion because it was inconsistent with (1) her own treatment notes, (2) other treatment notes in the record, and (3) the claimant's level of treatment. *Id.* at 30.

/////

1    The applicable regulations provide that a chiropractor, although a treating medical source,
2    is viewed as an "other source" and not as an "acceptable medical source." SSR 06-3p, 2006 SSR
3    LEXIS 5; 20 C.F.R. § 404.1513(d). In rejecting testimony from an "other source," the ALJ need
4    only give germane reasons for doing so. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).
5    Inconsistency with the medical evidence is a germane reason for an ALJ to discredit lay
6    testimony. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); *Lewis v. Apfel*, 236 F.3d
7    503 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts
8    with medical evidence.").

9    First, the ALJ rejected Dr. Hamby's opinion because it was inconsistent with her own
10   treatment notes. Dr. Hamby's treatment notes from June 2010 to January 2012 indicate that
11   plaintiff's pain was mild or low to moderate. *Id.* at 261-262, 363-364. On July 1, 2010, Dr.
12   Hamby completed a form noting that plaintiff was unable to work due to his back problems, but
13   anticipated plaintiff could return to work on August 1, 2010. *Id.* at 254. On August 9, 2010, Dr.
14   Hamby completed a patient status form indicating plaintiff returned to work on July 5, 2010 and a
15   full recovery was anticipated. *Id.* at 253. As noted by the ALJ, these findings do not support the
16   severe limitations assessed by Dr. Hamby.

17   Further, the ALJ specifically rejected Dr. Hamby's assessment of plaintiff's limitations in
18   standing, walking, sitting, and lifting as they were inconsistent with the VA treatment notes,
19   "which indicated that the claimant was doing well and rarely had to use pain medication." *Id*. at
20   30, 312, 324. Indeed, plaintiff reported no pain on several visits. *Id.* at 283, 313, 316, 325, 382,
21   390, 432. While plaintiff reported that a pinched nerve in his back causes severe pain, he
22   experiences pain only a couple times per year. *Id*. at 57, 181, 184, 265, 324. The ALJ logically
23   inferred that from these records that plaintiff was able to perform more extensive activities than
24   those opined by Dr. Hamby. *See Macri*, 93 F.3d at 544 ("[T]he ALJ is entitled to draw inferences
25   logically flowing from the evidence").

26   The ALJ also rejected Dr. Hamby's opinion because the assessed limitations were
27   inconsistent with the minimal treatment plaintiff received. In June of 2010, Dr. Hamby
28   recommended plaintiff get an MRI on his lumbar spine, but there is no evidence that plaintiff

9

followed this recommendation. *Id*. at 257. In fact, the only medical treatment plaintiff received for his lower back pain was prescription pain medication and minimal chiropractic treatment. *Id*. at 312, 324. The record reflects that plaintiff "received significant benefit" from chiropractic treatment, *id*. at 265, and rarely used his pain medication. *Id*. at 312, 324. Thus, the severe limitations opined by Dr. Hamby are inconsistent with the record as a whole.

Given the ALJ's thorough discussion of the inconsistencies between Dr. Hamby's opinion and the medical evidence, the ALJ easily satisfied his burden of providing germane reasons for rejecting Dr. Hamby's opinion. Accordingly, the ALJ did not err in rejecting plaintiff's treating chiropractor's opinion.

### D. The ALJ Did Not Err in Assessing the Plaintiff's Credibility.

Plaintiff also argues that the ALJ erred by failing to give legally adequate reasons for rejecting his testimony. ECF No. 14 at 15-16.

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of impairment, the ALJ may then consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. *See id*. at 345-347. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. *Smolen*, 80 F.3d at 1284. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. *See Flaten v. Secretary of HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. *Marcia v. Sullivan*, 900 F.2d 172, 177 n. 6 (9th Cir. 1990).

"Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan*, 169 F.3d at 599.

At the hearing, plaintiff testified that he has mesothelioma and a "continuous" tremor in his dominant left hand that is so severe it interferes with his ability to shower, shave, dress, write, sign his name, and type and makes it so he must hold a glass with two hands, eat with his right hand, and can never hold a knife. AR 45, 52-54. Plaintiff further testified that he can walk no more than ten minutes without a break due to back and leg pain, has depression and anger issues, and experiences debilitating neck pain "twice a month" for "three to seven days." *Id.* at 50-51, 54-57. He also testified that he lays down an average of four hours per day for twenty to forty-five minutes at a time, experiences side effects from his pain medication, can only concentrate for three to four minutes at a time, and that he needed to use both hands to lift a gallon of milk. *Id.* at 57-59.

The ALJ found that plaintiff's statements regarding the extent of his limitations were not fully credible because the "symptoms do not occur at a frequency or severity that would interfere with [plaintiff's] ability to perform work on a regular and sustained basis . . . ." *Id.* at 29. The ALJ provided several specific reasons for reaching this conclusion. First, the ALJ found plaintiff's testimony of debilitating impairment was not credible because it was inconsistent with the minimal treatment received. *Id.* at 29-30. Evidence of conservative treatment provides a sufficient basis for discount a claimant's testimony regarding severity of an impairment. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)). The only treatment received for plaintiff's lower back pain and sciatica were chiropractic adjustments and taking Vicodin as needed. As discussed above, the record reflects that plaintiff "received significant benefit" from chiropractic treatment, *id.* at 265, and rarely used his pain medication. *Id.* at 312, 324. Plaintiff's testimony that he experiences debilitating back pain is inconsistent with his limited treatment he received.

As noted by the ALJ, plaintiff also received minimal treatment for his depression. When plaintiff was first seen for depression, it was noted he was not interested in treatment or

11

psychotropic medication, but merely wished to document his distress for a claim he was working on against the military. *Id.* at 281. Plaintiff did start attending one-on-one and group counseling sessions, but declined medication for his depression. Plaintiff's initial refusal of treatment and the lack of prescription medication from any treating source are inconsistent with plaintiff's allegations of moderate mental limitations. Thus, the ALJ properly considered the minimal treatment received in discrediting plaintiff's testimony.

The ALJ also discredited plaintiff's subjective complaints because plaintiff's reported daily activities contradicted his alleged limitations. *See Smolen*, 80 F.3d at 1284 (an ALJ may rely on inconsistent testimony in assessing a claimant's credibility). As previously discussed, plaintiff testified that he had difficulty writing, signing his name, typing, dressing, showering, and shaving, and his tremor was continuous. AR 52-54. In the Function Reports completed on October 5, 2010 and May 10, 2010, plaintiff stated he is capable of cleaning, doing laundry, driving and going out shopping two times per week for an hour. *Id.* at 178-179, 213. The ALJ found that plaintiff's testimony of limitations, such as a limited ability to walk, lift a gallon of milk, and limitations caused by his tremor, contradict his reported daily activities. The ALJ was entitled to consider that contradiction in evaluating credibility.

The ALJ further found that plaintiff's allegations were not supported by objective medical evidence. While an ALJ may not rely solely on a lack of objective medical evidence to support an adverse credibility finding, it is a relevant consideration in assessing credibility. *See Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan*, 169 F.3d at 595. With regard to plaintiff's mental impairments, the ALJ noted that examining physician, Dr. Price, found plaintiff had no psychiatric diagnosis and had no mental limitations. AR 341. Furthermore, plaintiff's treating sources did not provide an opinion that plaintiff had moderate limitations impacting his ability to work.

As for plaintiff's hand tremor, the ALJ acknowledged that it was a medically determinable impairment, but found that plaintiff's allegations of "continuous" and debilitating hand tremors were not credible as they were not supported by the objective medical evidence. The ALJ noted that although most physicians indicated that plaintiff had a hand tremor, it was described as only

12

"slight or mild," or "stable." AR 29, 268, 313. Further, no treating, examining, or reviewing medical source has assessed any manipulative limitations or treatment options with regard to the tremor. *Id*. at 30. As noted by the ALJ, treating sources observed that plaintiff's tremor had an "unusual presentation," *id*. at 331, and that it "[s]eems only to demonstrate when asked . . . ," *id*. at 332. This evidence directly contradicts plaintiff's testimony that his tremor is "continuous," *id*. at 54, and prevents him from cooking and holding a knife or glass in his left hand.[3] *Id*. at 52.

Thus, the ALJ provided numerous appropriate reasons for discrediting plaintiff's subjective complaints and collectively they constitute a clear and convincing basis for doing so. Accordingly, the ALJ did not err in assessing plaintiff's credibility.

E. The ALJ Did Not Err in Assessing the Credibility of Lay Testimony.

Plaintiff next argues that the ALJ erred by disregarded the statements of plaintiff's brother, David Holcomb, without providing legally sufficient reasons. ECF No. 14 at 15-16. Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. *Lewis*, 236 F.3d at 514; *Stout*, 454 F.3d at 1053; *see also Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

The ALJ indicated that she gave Mr. Holcomb's testimony little weight because the statements he gave were similar to plaintiff's subjective complaints and inconsistent with medical evidence. As previously discussed, the ALJ properly discredited plaintiff's testimony. Given that the ALJ provided legally sufficient reasons for rejecting plaintiff's testimony regarding his subjective complaints and that his brother's statements merely substantiate plaintiff's complaints,

---

[3] The court notes that there are other contradictions in the record. For instance, in the second Function Report completed on May 10, 2010, plaintiff stated that he prepares a quick breakfast and lunch for himself daily and that he "always fixed quick meals for himself." AR 212. Dr. Price also noted in her assessment that plaintiff was able to "shop, cook, and clean for himself." *Id*. at 340. However, plaintiff testified that he is unable to cook anymore because his "hand shakes so much [he] would just spill and make a mess." *Id*. at 178. Inconsistencies in plaintiff's statements were also observed by non-examining physician Dr. Greenwood, who noted a contradictions between plaintiff's claim that he could not cook or do yard work, but reported being able to go out alone, drive, and shop, and ultimately concluded that plaintiff's "[c]redibilty [was] an issue in view of objective findings . . . ." *Id*.

it follows that the ALJ gave germane reasons for not fully crediting Mr. Holcomb's testimony. *See Valentine*, 574 F.3d at 694 ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [plaintiffs] own subjective complaints, and because [lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.").

IV. CONCLUSION

The ALJ carefully reviewed all of the evidence in the administrative record and properly weighed the medical opinions, lay testimony, and plaintiff's subjective complaints when determining plaintiff had no severe impairments at step two. Accordingly, the ALJ applied the proper legal standard and supported her decision with substantial evidence. Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. The Commissioner's cross-motion for summary judgment is granted; and

3. The Clerk is directed to enter judgment in the Commissioner's favor.

DATED: March 17, 2015.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE